the plaintiff can succeed in the action as one at law to recover a sum of money only. * * * All that we determine is that, in form and substance, the action is based upon contract, express or implied, and is to recover a sum of money only, and that, therefore, under the sections cited, it should have been brought to trial at a jury term."

The other grounds of demurrer assigned require no special comment, our attention being directed to the main point relied upon by the appellant, which we have briefly discussed, as to the effect of the act of 1892, considered in the light of the allegations of the complaint. While it may be that the plaintiff will be unable to prove her cause of action at law without conflicting with the statute, we think that, disregarding some, there still remain sufficient allegations to support the complaint in form as an action at law.

The judgment appealed from, therefore, should be affirmed, with costs, with leave to defendant to withdraw demurrer and answer in 20 days, on payment of costs in this court and in the court below. All concur.

---

(30 Misc. Rep. 395.)

### In re CLAPP'S ESTATE.

(Surrogate's Court, Washington County. January, 1900.)

EXECUTION—OBJECTION TO ACCOUNT—RES JUDICATA.
　　Where an heir filed objections to the accounts of an executrix, and a hearing and adjudication were had thereon, adverse to her, an objection filed by her to the final report of the executrix, which raised the same questions, will not be considered.

Objection by Lucy H. Cuthbert to the final settlement of Abigail Clapp as executrix of the estate of William Clapp, deceased. Dismissed.

T. D. Trumbull, Jr., for executrix.
R. O. Bascom, for contestant.

DAVIS, S. This is a proceeding by the executrix, upon her own petition, for the final judicial settlement of the estate of her testator. Upon the filing of the petition and account, a citation was issued and served upon the necessary parties. On the return of the citation, Lucy H. Cuthbert, one of the heirs at law, and a beneficiary named in the will of the testator, appeared in person and with counsel, and filed verified objections to the executrix's account, and served a copy of the same upon the attorney for the executrix. The executrix, by her attorney, moved to strike out the objections on the ground, among others, that the objector had, in a former proceeding instituted by herself, exercised and exhausted her right and opportunity to object to the executrix's said account, by filing objections thereto, and demanding that it be surcharged; and, after a trial and hearing thereon, said objections were not sustained, and the account judicially settled and allowed, as presented. It appears from the records in this case that, when the will of the said de-

ceased was offered for probate, Lucy H. Cuthbert (the same person who is now objecting) appeared and filed objections to the probate of the will. After several hearings a compromise was effected; the objections being withdrawn, and all the heirs at law signing an agreement, August 28, 1895, under seal, to the effect that the contestant, Lucy H. Cuthbert, should, after payment of the debts and expenses, share equally with the other heirs in the surplus, if any, in the final distribution of the estate, without regard to any or either of the legacies under said will, except the legacy to Abigail Clapp. In March, 1898, Lucy H. Cuthbert filed a petition in this court, upon which a citation and order were issued, requiring the executrix, Abigail Clapp, to render a full and final account of her proceedings as such executrix, and to pay to the petitioner her portion of the surplus of the estate, according to the agreement of August 28, 1895. Upon the return of the citation and order the executrix made a full and final account of her proceedings. The petitioner filed general and specific objections to said account, and demanded that it be surcharged in a large amount. Several hearings and adjournments were had, and a large amount of testimony was taken on the trial of said objections. None of the petitioner's objections to the said account were sustained by this court; and it was found that the estate had been so reduced by debts, expenses, litigation, claims, and the shrinkage in the values of the securities, that there was no surplus, and nothing due the petitioner from the estate under the agreement of August, 1895. On the present accounting the executrix files the identical account that she did on the other accounting, with the exception of a few items of expense, the payment of allowances to counsel under the former decree, and the addition of about $1,700 to the assets of the estate. None of these additional items, however, are objected to on this accounting. Moreover, it appears that the estate now is insufficient to pay the claims that have been allowed and adjudged against it; and if the objections now filed could be sustained, and the account of the executrix surcharged, such surcharge would inure to the benefit of the creditors, and not to the party now objecting.

From all the proceedings taken and had in this court before me, I do not think the party now asking to surcharge the executrix's account has a standing in court that gives to her the right to come in and file objections to the account in this proceeding. She has had her day in court. In the proceedings for the final settlement of the account instituted by herself she had ample opportunity to object to this same account, which opportunity she improved, and filed objections; and she must be presumed to have made every objection to the account that could be made, and, after a full and fair hearing upon said objections, none of them were sustained, and the account now filed being almost identical with the account filed in the former proceeding, and there being no change in the account, nor in the condition of the estate, to improve or enlarge the rights of the parties to the agreement of August, 1895, I do not think that the objections now sought to be made to the account can be allowed to stand; and the

motion to strike them out must be granted, and the account judicially allowed and settled as presented.

A decree may be entered in accordance with this opinion. Decreed accordingly.

(30 Misc. Rep. 578.)

## In re MORGAN'S WILL.

(Surrogate's Court, New York County. February, 1900.)

WILLS—PROBATE—PROOF OF DEATH.

The hotel where testatrix stayed was completely destroyed by a fire, which was first seen at 3 o'clock in the afternoon, and in 40 minutes the walls began to fall. No one on the sixth floor, where testatrix roomed, was known to have escaped, and the remains of the victims were incapable of identification. Testatrix called at the room of a friend on the sixth floor less than an hour before the fire. From the date of the fire (now more than a year ago), she has never been seen or heard from, no checks have been drawn on her account at the trust company or the bank, and her agent, who collected her rents and rendered monthly accounts, has never heard from her. *Held*, that such facts were sufficient proof of the death of the testatrix, and her will was admitted to probate.

Petition for the probate of the will of Annie Taylor Morgan, deceased. Probate decreed.

James S. Graves, for petitioner.

James A. Hudson, for trustee.

Manley & Wadley (Thos. C. T. Crain, of counsel), for contestant.

THOMAS, S. The evidence of the death of the testatrix by being burned in the fire which consumed the Windsor Hotel on March 17, 1899, though circumstantial, is entirely sufficient. She parted from her hairdresser at about 20 minutes past 1 o'clock in the afternoon, and declared that she then intended to return to the hotel, and later to go to the opera. She was subsequently seen in house attire on the ground floor of the hotel by two of the clerks, and by a guest, and then procured cash for a check of $10, which she drew on her account in the Farmers' Loan & Trust Company, and went towards the elevator leading to her room on the sixth floor. She was seen when leaving the dining room on the second floor, at about a quarter after 2, and then went to the elevator and rang the bell. She called at the room of a friend on the sixth floor within less than an hour before the beginning of the fire. The fire became known at about 3 o'clock, and raged most furiously in the upper floors, in the vicinity of her rooms. In 40 minutes after the first warning the walls of the building began to fall, and proceeded to the utter destruction of everything consumable in it. Not a single article of furniture was spared, and even the cast-iron work was nearly melted. No person who was known to have been on the sixth floor of the building at the time of the first alarm is shown to have escaped, and the remains of the victims were so completely consumed as to be incapable of identification. From the time of the fire until now (being nearly a year), no friend of the testatrix has seen her or heard from her, and no checks are shown to have been drawn on her account in the Farmers' Loan &